A. T. DWIGHT AND ANOTHER v. W. H. OVERTON AND OTHERS.

1. An assignment for the benefit of creditors, conveying property to trustees, with power to sell and to apply the proceeds in payment of the secured debts, is not to be regarded as a mere mortgage security, necessitating the presentation of the creditors' claims to the grantor's administrator for allowance; nor are the powers by it conferred upon the trustees revoked or defeated by the death of the grantor. It is an absolute conveyance, by which both the legal and equitable estate is divested out of the grantor, and vested in the trustees, subject to the uses and trusts in favor of the creditors.

2. The case of Robertson v. Paul, 16 Texas, 472, referred to, and the ruling therein questioned, as to the effect of our probate statutes upon the rights of creditors who have been secured by an assignment of property to trustees for their use.

3. The case of Bender v. Crawford, 33 Texas, 745, cited with approval; and the further opinion indicated that the suspension of our statutes of limitation from January 1861 to 1870, as declared by the forty-third section of Article 12 of our present Constitution, applies to our probate enactments which require claims against a decedent's estate to be presented to the administrator within a limited time.

APPEAL from Tarrant. Tried below before the Hon. C. T. Garland.

The opinion of the court sufficiently discloses the character and states the facts of the case. The "second ground of defense," mentioned in the opinion, was the non-presentation of the plaintiffs' claims to the administrators of Oldham, within twelve months after the grant of administration. The assignment designated fourteen creditors, and the amounts due to each, and provided that in case a surplus should remain after paying them, the trustees should apply it to any other just debts of Oldham; and if, after all just debts should be paid, there should still be a surplus, it should be paid to Oldham. It was executed by Oldham alone.

When the opinion was delivered, Presiding Judge Evans announced that, as he was not present when the cause was submitted, he gave no opinion in it.

*J. W. Ferris*, for the appellants.—The ruling of the court in sustaining the exceptions to the petition, and giving judgment for the defendants and the intervenor, is sustainable only upon the ground that the deed sued upon is nothing but a mortgage, that the power to sell was revoked by the death of Oldham, and that the plaintiffs have lost their lien by their failure to present their claims within the first twelve months of the administration. We complain of this ruling as error, and maintain that said instrument sued upon is more than a mortgage or a mere security for debt—that it is what is technically known as "an assignment for the benefit of creditors," and has the force and effect of an absolute conveyance, and that the rights conveyed by said instrument are not affected by the death of Oldham.

I.   In support of our position that an assignment for the benefit of creditors is treated as an absolute conveyance, we quote from the authorities, as follows:   "An assignment in trust for creditors is an absolute transfer to sell and pay at all events; and in this respect the distinction between assignments and mortgages is apparent." (Burril on Assignments, 2d Ed., p. 34.)   "A conveyance in trust to pay debts is a valid conveyance founded on a good consideration."   (2 Johnson's Ch. R., page 198; Stephenson v. Haywood, Prac. in Ch., 310.)   "A general assignment, *bona fide*, made by the debtor and assented to by the assignee, will be deemed a valid conveyance founded on a valuable consideration, and good against creditors proceeding adversely," etc.   (2 Story's Eq., Sec. 1036*a*, and cases

cited in note.)   In express trusts to sell land for benefit of creditors, "the whole estate, in law and equity, is vested in the trustee, subject only to the execution of the trust." (4 Kent, page 310.)   In the case of Brazier v. West *et al.*, 7 Peters, 613, where there was an assignment for the benefit of creditors, it was held by the court that "the real estate passed by the delivery of the deed ; that it has never been alleged in this country that a general assignment of all a man's property is *per se* fraudulent. The right to make it results from that absolute ownership which every man claims over that which is his own."   Again, "when the trust is to sell and convey in fee simple absolute, a legal estate is vested in the trustees, commensurate with the interest which they must convey in execution of the trust." (12 Howard, Neilson v. Lagow *et al.*, page 107.)   The principle is, perhaps, more fully stated thus: "A deed conveying property in trust absolutely for the benefit of specified creditors, if *bona fide*, is valid as a conveyance in consequence of the personal assent of the creditors, and is not a mere power, etc.   It operates to divest the debtor of his entire estate and interest in the property assigned, so that he cannot convey or encumber it by mortgage as against the creditors, and he retains nothing except the equitable and incidental right to discharge the trust by payment of the debts before sale, and thus entitle himself to a reconveyance of the whole estate," etc.   (Burril on Assignments, 2d Ed., page 351, and see cases cited.)

An assignment for the benefit of creditors is treated by our own courts as "a legal conveyance of property." (Vanhook v. Walton, 28 Texas, pages 71-72 ; Baldwin v. Peet, 22 Texas, page 714.)   True, the questions before the court went mainly to the validity of the instrument in question, yet the general law applicable to and governing assignments is recognized and applied.

It is evident that this class of conveyances are widely distinguished from mortgages. In all cases of mortgage, the mortgagor is treated in equity as the real owner, the equity of redemption being subject to attachment or levy by a creditor, and the mortgagee holding only a lien or security, with the right to foreclose, etc. Trust mortgages are said to be executed "when the debtor is unwilling to give to his creditor the title to or management of the property, and he therefore transfers it to a third party to hold in trust." "Usually they are to hold the property and reconvey the same to the original owner, if he pay the debt; if he fail to do this, the trustee is to sell the property," etc. (3 Parsons on Con., page 420.) But "it has been distinctly held that the original owner has no equity of redemption which is liable to attachment or execution," as in cases of mortgage proper. (Id, page 451.) It is clear, therefore, that a trust mortgage is a conveyance upon condition, distinguishing it from an assignment, which is a conveyance to trustees with power "to sell and pay at all events."

Is the instrument in question an assignment for the benefit of creditors, or a mortgage only? A court of equity is rightfully called upon to give the proper construction, if such construction be necessary. (Burrill on Assignments, page 373.) "An assignment should rather be made available than suffered to fail. Such a construction will be given to it as will carry into effect the intention of the parties. The deed is to be construed by the *res gestæ*; and thus courts are permitted to look to the circumstances and motives which led to its execution, and the objects to be accomplished." (Id., page 374.) That this is a deed of assignment, and not a mortgage, is manifest from the deed itself. 1. It is in the usual and approved form of such a deed.

(See Burril's Forms.) 2. It is a grant to trustees for the benefit of creditors—not upon condition, but with "power to sell at all events." 3. It was executed by Oldham, a citizen of Texas, at the conclusion of the late war, to satisfy his numerous creditors in the city of New York, for debts contracted *ante bellum*. It was executed and proven up to recover lost credit, and in the city of New York, where the import of such deeds are well understood. It was at a time when Texans had no money, and when real estate here would command nothing in the market. In the light of these circumstances the intention of the parties is evident. Notes were given for the old debts at one, two, and three years, and their payment was provided for by an assignment of the real estate in Texas to trustees, with power to sell at any time, as might seem best for their interests—anticipating that the property would become marketable in three years at a reasonable price. There is no condition upon the face of the deed, nor was evidence *aliunde* introduced, proving a condition. It was evidently intended by the parties to be an absolute conveyance for the benefit of the creditors named in the deed. And shall not the intention of the parties prevail?

II. In this case there is no charge of fraud; the validity of the deed is not questioned. If Leigh Oldham were living, the right of the trustees to take possession, to sell, and to pay the creditors named in the deed, would not be disputed. Are their rights and powers affected by his death?

We have seen, upon the authority of Chancellor Kent and others, that by an assignment for the benefit of creditors, "the whole estate, in law and equity, is vested in the trustee, subject only to the execution of the trust." Also, "that the grantor retains nothing

except the equitable and incidental right to discharge
the trusts by payment of the debts before sale, and
thus entitle himself to a reconveyance of the whole
estate," etc.    (Burril on Assign., 351.)    The entire
estate having vested by the deed, surely the death of
the assignor could not divest the title.    Oldham, if
living, would only have an equitable right to a reconvey-
ance upon the payment of the debts before sale.    Ver-
ily, the estate of Oldham, deceased, could not have
more.

And treating the deed in question as a trust deed
only, it is settled by the highest authority that "a
power coupled with an interest" is not affected by the
death of the grantor.    In the case of Hunt v. Rous-
manier, 8 Wheaton, page 174, Chief Justice Marshall
said: "We hold it to be clear that the interest which
can protect a power after the death of a person who
creates it, must be an interest in the thing itself.    In
other words, the power must be engrafted on an estate
in the thing itself.    A power to A to sell for the benefit
of B, engrafted on an estate conveyed to A, may be ex-
ercised at any time, and it is not affected by the death
of the person who created it.    It is then a power
coupled with an interest.    This power is coupled with
an interest in the thing which enables him to execute it in
his own name, and is, therefore, not dependent on the life
of the person who created it."    The following authori-
ties are to the same effect:  2 Washburn Real Estate,
page 73; Beatie v. Butler, 21 Mo., 313; Hannah v. Car-
rington, 18 Ark., 104;  Wilburn v. Spofford, 4 Sneed,
698; Bonny v. Smith, 17 Ill., 533; Jefferson, Assignee,
v. Fisher, 7 Ind., 699, 702; Robertson v. Gains, 2
Humph., 307; Varnum v. Meserve, 8 Allen, 158.

Against this position the defendants rely upon the
case of Robertson v. Paul, 16 Texas, page 474, where it

was held that a power to sell contained in a mortgage or deed of trust given to secure the payment of a debt, cannot be executed in this State after the death of the constituent. The peculiarity of our laws governing the estates of deceased persons, is given as the reason for the rule. The argument is, that a deed in trust is nothing but a mortgage; and as the mortgagee is required to prove up his claim and enforce his lien in the probate court, so the creditor in a trust deed must prove his claim, and the powers of the trustee must necessarily cease. We have not been able to find the decision of a court of any other State going the length claimed in this case. Is there not a material difference between a mortgage and a deed in trust? Is there not also a difference between a naked power and a power "engrafted on an estate," as defined above by Chief Justice Marshall? Then again, "the distinction between a power and a trust is marked and obvious." "Powers," as Chief Justice Wilmot observed, "are never imperative; they leave the act to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted." (Selwin on Trusts and Trustees, 164.) Does it follow, that because a mortgagee must go into the probate court to enforce his lien, a creditor in a trust deed must do likewise? Why defeat a trust which is imperative? Why defeat the will and desire of a debtor who has conveyed specific property to trustees with instructions to sell and pay a named debt? Why not as well decree that a debtor cannot direct the payment of a debt by his will and testament? Whatever may be the answer to these questions, it by no means follows that the principle settled in the case of Robertson v. Paul should be held applicable to deeds of assignment. This was sought to be done in the case

of Caton v. Moseley, 25 Texas, p. 377, where the court said, "whether or not the principle of the decision in the case of Robinson v. Paul is applicable to assignments in trust, for the benefit of creditors, is a question which we do not think it necessary to decide in this case, although it is not supposed to present any difficulty." It is an open question yet, as we believe, so far as the same is applicable to the case now before the court.

The positions we have taken with reference to the deed in controversy, together with the authorities cited, are confidently submitted to the court. If correct, it follows that the lands conveyed by the deed were improperly inventoried as the property of the estate of Oldham, deceased ; that the sale by the administrator conveyed no title ; that defendant purchased with notice of plaintiffs' deed ; and that the court below erred in sustaining the exceptions to the petition and in rendering judgment for the defendants.

III. With reference to the question of jurisdiction raised by the defendants, we submit, that under the Constitution of 1866, in force when this suit was brought, the district court had original jurisdiction and general control over the county court, established for the transaction of business appertaining to estates, etc. (Constitution of 1866, § 6, Art. 4.) It is held in the case of W. L. Sloan v. A. Sears, appeal from Harrison, not yet reported, that the original jurisdiction of the district court is maintainable.

IV. The effect of an assignment being an open question in the event of the death of the assignor, the creditors proved up their claims and presented them with the deed in trust for approval and allowance, for the purpose of securing, at all events, from the estate of Oldham, any balance that might be due, after sale and

payment under the trust deed, and also for the purpose of enforcing their lien, should said deed be considered a mortgage only. The plaintiffs, therefore, pray in the alternative that the lien, if a lien only they have, be enforced; that the property be ordered to be sold; and, if this cannot be done, that the proceeds of the sale already made under order of the probate court, be applied to the payment of these debts, etc.

Assuming the deed in trust to be a mortgage only, we maintain that there was error in disregarding the plaintiffs' lien, by overruling the exceptions to the plea of intervention, denying the relief sought by the plaintiffs, and awarding judgment to the intervenor.

It is claimed by the intervenor that the plaintiffs' claims were not presented within the first twelve months of the administration, and that their payment, even out of the proceeds of the sale of the mortgaged property, is postponed until his claim, presented within the first twelve months, is fully paid; and it was so held by the court below. The practical effect of this ruling is to destroy the lien altogether, as will appear from the insolvent condition of the estate.

We reply, first, that the mortgagee is entitled to an order of sale of the mortgaged property to satisfy his claim, without any restrictions as to time. (Paschal's Digest, Art. 1319.) A mortgage is an express lien created by contract between the parties; and, although claims are required to be presented within twelve months, and such claims are to be first fully paid (Id., Art. 1307), can it be held that such preference overrides a mortgage lien, and destroys the contract?

2. The order of paying the debts of the deceased is, that the proceeds of sale of the mortgaged property shall be applied to the payment of debts secured by the mortgage. (Id., Art. 1339.) And if the proceeds of such

sale are in the hands of the administrator, the mortgagee is entitled to an order for payment to him. (Id., Art. 1342.) It is admitted that the proceeds of sale are in the hands of the administrator.

3. If it is held that the claims allowed within the first twelve months have preference of payment, under the law, out of the mortgaged property, it would operate as a statute of limitations ; and we then say that as such it was suspended by the late Constitution, Art. 12, § 43.

In opposition to this view we are referred to the case of Ryan v. Flint, 30 Texas, page 385 ; and of that case we must say, that the learned judge who delivered the opinion appears to have labored more to ascertain the object of the probate law enacted before the war, than that of the remedial ordinance made afterwards. The court says, "Article 1307, Paschal's Digest, is not a statute of limitations. It is no extinguisher of the right of action. No remedy is withheld. The right of action survives the limitation of twelve months," etc. If this reasoning is correct, as applicable to the case then before the court, it does not follow that it would apply to a case like this, where a mortgage lien is involved. The judgment rendered in this case, in favor of the intervenor, does extinguish our right to a foreclosure of the lien ; it withholds our remedy ; it denies that our right of action survives the limitation of twelve months, by giving the mortgaged property to other creditors. If the mortgagee's right of action to foreclose his lien is not extinguished, but survives the limitation of twelve months ; if by not presenting the claim within twelve months, there is no bar of the right of action against the mortgaged property, then we insist that judgment should go for plaintiffs, as prayed for. So, also, if it is considered that the remedy is withheld by the law, then that law must operate as a statute of

limitations, and should be considered as suspended by the Constitution until 1870, after this suit was instituted.

It is said, "that it was the manifest desire of the makers of the probate law to hasten the final settlement of estates." Was it not also the desire of the framers of our late Constitution to suspend the haste?

It seems to us that the framers of our Constitution took a broader view of the subject. Mindful of the condition of the country after the war, as appears on the face of the instrument itself, the statutes of limitation were spoken of in their most comprehensive sense. Our State government, in all its details, was defective; so much so, that the very Convention itself had been organized by the General Government for reconstruction. The mail service was very imperfect. Intercourse with citizens of the older States was interrupted. It was believed by them to be personally hazardous to come to this State. In this state of things, why relieve against diligence the creditor of a living man, and not also the creditor of an estate?

*Hendricks & Smith*, for the appellees.—The defendants and intervenor contend that the deed of trust is a security only, in the nature of a mortgage; and the grantor or assignor dying before anything was done in the matter by the trustees, the whole subject matter comes under the laws of the State of Texas regulating the settlement of the estates of deceased persons. That the deed of trust can be construed to be nothing more than a mortgage or security for the debt, giving only a specific lien on the property, we think is clear.

1. The property is conveyed to the trustees with power to sell and pay debts, etc., and was not absolutely in payment, but by way of security only.

2. To pay any other debts of the said Oldham that there might be due, or to become due, out of any surplus that might be left.

3. Should there be any surplus after paying all the debts, the remainder to be returned to the said Oldham.

4. The said Dwight & Trobridge are created agents and attorneys to sell, convey, etc.

5. The instrument does not show that said Oldham was being pressed with any debts—that he was embarrassed or in failing circumstances.

6. It does not show that the property was the whole, or even a larger portion of his estate.

For the proper construction of this instrument we cannot do better than to refer to the forcible language of Judge Roberts in Howerton v. Holt, which was a case of special assignment, for the benefit of a creditor. He says: "As a means of determining the character of this assignment, it is proper to notice, first, that it was not shown that Hudnal was being pressed by any debts except that of Burnside & Co., or that he was insolvent, or in failing circumstances; second, it is not shown that the property assigned was the whole, or even the larger portion of his estate. It stands on the ground, then, of a special assignment in trust for the security and payment of a particular creditor, and may be regarded as a trust in the nature of a mortgage, with some of the qualities of an assignment." (23 Texas, 51–59 ; Fitch v. Hollister, 4 Comstock, 216 ; Burril on Assignment, 112, 256.)

There is nothing in this deed in assignment to show that Oldham was being pressed by any of his creditors, or that he was insolvent or in failing circumstances; nor is it stated that the property assigned was the whole, or even the larger portion of his estate. These facts must appear from the instrument itself to constitute it

26—XXXV

a valid assignment, and cannot be proven *aliunde*, as the court must construe and determine the nature of the instrument. (Burril on Assign., 124, 373.)

This deed in assignment was made direct to a portion of the preferred creditors, and as a security to these and other preferred creditors, and was not executed by said Oldham and accepted by said creditors as an absolute payment, but by way of security only. Had the assignment been accepted by way of full payment, or in satisfaction of the debts of the preferred creditors, it would of course be wholly divested of the character of a trust, and be in the nature of an absolute conveyance for a valuable consideration. But it was made by way of security only. It was in contemplation of the parties that the property conveyed would more than pay the debts secured thereby, and a resulting trust of the surplus was reserved to the assignor, and the instrument in legal effect must be regarded by the court as in the nature of a mortgage only, giving but a specific lien on the property conveyed. (Burril on Assign., 149–151.)

If Oldham had paid off the notes secured by this trust property from other means, would not the trust created by the deed have been terminated? and could the trustees then have gone on and sold the property? They certainly could not, for the objects for which the trust estate had been created had been accomplished— that is, the payment of the debts.

We hold that the deed of trust is ineffectual to pass the estate to the trustees absolutely; it does not name all of the creditors of Oldham, nor does it settle their respective interests in the property; nor is there any schedule annexed to the assignment supplying the deficiency. This the assignor must do. It must not be left to the assignee, nor reserved to the assignor of sub-

sequently doing so. (Burril òn Assign., 235–226 ; Caton *et al.* v. Moseley, 25 Texas, 374.)

We respectfully commend this decision to the court.

It is true that the deed of trust names some of the creditors, but the assignor recognizes the fact that he has other creditors, and does not name them, or the amount due each ; nor is there any schedule attached supplying the deficiency. The instrument would be void as to creditors, still the court might give it effect as a mortgage. We also hold that deed of trust is invalid so far as the creditors not provided in the same are concerned. The great length of time allowed for closing the same, that is three years, rendered it void as to outside creditors, and was a fraud upon them. The courts will look on a transaction of this kind with great distrust. (Burril on Assign., 200, 201–203.) This deed cannot be claimed to be an assignment at common law. It is wanting in some of the essential particulars. It is executed by none of the parties except the grantor, and is nothing but a deed of agency. (See Burril on Assign., 92, Note 2 ; ib. 235, Note 3 ; Lewin on Trusts, 481, 482 and 483, side pp.)

If the ruling of the district court is correct in construing the instrument to be a mortgage only, the plaintiffs cannot maintain their action of trespass to try title. (Duty v. Graham, 12 Texas, 427 ; Mann v. Falcon, 25 Texas, 274 ; 4 Kent, 168, side page.) Nor are they entitled to recover anything on the prayer in the alternative for the proceeds of the sale of the mortgaged property.

The debts of the plaintiff, as well as those for whom they sue, although secured by the trust deed, were claims for money against the estate of L. Oldham, deceased, which were required to be presented and established under the law. (See Art. 1307, Paschal's Digest,

also Art. 1319 ; notwithstanding the mortgage security; Graham v. Vining, 1 Texas, 671; Duty v. Graham, 12 Texas, 427; Danzy v. Swinney, 7 Texas, 625 ; Robertson, v. Paul, 16 Texas, 475 ; Buchanan v. Monroe, 22 Texas, 537; Cunningham *et al.* v. Taylor, 20 Texas, 126.)

Had the plaintiffs in the first twelve months established their claims against the estate, they could then, under Article 1319, Paschal's Digest, have applied for the sale of the mortgaged property ; or on failure to do so, should the administrators have sold the property for the payment of debts, the plaintiffs could have demanded the payment of the proceeds of the property under Article 1342; but failing to present their claims within said twelve months under Article 1307, they are under said article postponed until all claims presented within said twelve months, and allowed by the administrator, and approved by the county judge, or established by suit, shall have been first paid ; and an order for the payment of any claim not presented within said twelve months could not have been had in an insolvent estate until all claims so presented had been paid in full. (See Arts. 1307–1344.)

This was not an executed contract. It was executory only, and depended upon the sale of the lands. The trustees had to carry out the trusts declared before it could be termed an executed contract. That being the case, the trust never having been carried out, and the debts being still unpaid and owing by the said Oldham at the time of his death, became at once debts against the estate of said Oldham.

We believe that it has been held by our courts, without a single exception, that all claims, debts, etc., against estates of deceased persons, regardless of the character of the debt, or the security, whether mortgage, deed of

trust, or other character of security, or whether there is power given to sell or not, have to be settled according to the laws of Texas regulating the settlement of estates of deceased persons dying intestate. It seems to be the settled policy of the country that our courts shall have the entire supervision of the settlement of such estates ; the sale of property, the payment of debts, and, in fact, everything that is done in the settlement of intestate estates, have to be done under the immediate supervision, direction and order of the courts of this State. We would again refer to Article 1319 of Paschal's Digest, in which the following expression is used : " Any creditor of the estate of a deceased person, holding a claim secured by a mortgage or other lien," etc. This language is broad enough to embrace claims of every character whatever against the estate of a deceased person, and we think the Legislature so intended when they enacted it. In support of this, we again refer the court to the case of Robertson v. Paul, 16 Texas, 475 ; Buchanan v. Monroe, 22 Texas, 537.

Plaintiff excepts to Howell's right to intervene, and his right to recover, and states that he shows no right to recover, etc. The second exception is that he discloses no right in law or equity to the relief sought. .

It is a well settled rule in chancery practice that all parties having a direct interest in the matter in controversy can be made parties either as complainants or defendants, and each may set up his own interest in opposition to the other, and claim a decree disposing of such interest. The Supreme Court says, in the case of Legg v. McNeil, *et al.*, "having in our system but one form of action, we cannot perceive how the interest of parties not embraced in the suit can always be protected without allowing them to come in as intervenors or warrantors." (2 Texas, 428 ; ib. 430 ; Garrett v. Gaines, 6 Texas, 435.)

The only question to determine, so far as Howell's right to intervene is concerned, is whether or not he is interested in the estate of Leigh Oldham, deceased, or, in other words, the assets of said estate. He has a large claim against the estate; he proves up his claim, presents it, has it allowed and approved regularly within twelve months after administration is granted. It then becomes a judgment against said estate, and is ranked as such. The plaintiffs have a large amount of claims, greatly in excess of assets belonging to the estate (the same being insolvent). They do not present their claims for acceptance and approval until two years have elapsed after the grant of letters of administration. Now, if plaintiffs succeed in getting a judgment and order for the proceeds of the sale of the property, they take the entire assets of the estate, leaving the said Howell's claim, and other claims of like standing, which we hold is preferred to plaintiffs, nothing at all. Now, we contend that Howell's claim, having been properly established, gives it the character of a judgment against said estate, and gives him such an interest in the assets of the same as will allow him to come and contest the right of plaintiffs to recover.

So far as the appellee Overton is concerned, we think there can be no doubt about his holding the property. He had every reason to believe that plaintiffs expected to collect their debts through the county court, if collected at all; the plaintiffs having taken no steps to enforce their lien, until after the property was sold to pay debts; and the first steps that were taken by them was to present their claims for acceptance and approval; all of which was sufficient to induce him to believe that they would assert their rights through the county court, and could, at most, only claim the proceeds of the sale of the property; and so far as that question was con-

cerned, he stood indifferent; it was immaterial with him to whom the money went. It will be remembered that some of plaintiff's claims had been presented before (the large portion of them) and some after the sale of the property.

We submit the foregoing for the consideration of the court, and believe the authorities fully sustain the position taken by us. We therefore ask an affirmance of the judgment rendered by the district court.

WALKER, J.—At the close of the late war, Leigh Oldham executed and delivered to the plaintiffs, at the city of New York, a deed of assignment, conveying to them in trust for their own and the use of some eighteen other creditors, to whom he was indebted to the amount of about $13,000, the real estate in controversy, together with certain other lands situated within the State of Texas. The deed bears date July 10, 1865.

It appears that Oldham died in the month of September, 1866, and Huffman and Terry administered on his estate. The plaintiffs claim that the legal and equitable title vested in them on the delivery of the deed to the real estate therein described, and was not subject to be defeated by the death of Oldham, under the laws of Texas regulating the settlement of estates of deceased persons. (See Robertson's Administratrix v. Paul, 16 Texas, 472.) The prayer of the petition is in the alternative. It asks that the administrator's sale be set aside, and that their deed of assignment be interpreted to vest the title to the real estate in them. But in the event that the court shall regard their deed of assignment as nothing more than an equitable mortgage, then that the court decree a foreclosure. The defendants excepted to the petition, and answered, setting up a sale made in pursuance of

an order of the probate court; alleging, also, that the plaintiffs' claims were not presented to them, for allowance, within twelve months after the date of administration. They declare the estate of Oldham insolvent, and allege that the plaintiffs, regarded as mortgagees, have lost their lien.

Howell, the intervenor, claims to be the owner and holder of a large claim against the estate of Oldham, which was presented within the twelve months, and asks that his claim may be preferred to that of the plaintiffs.

The defendants filed exceptions to the plaintiffs' petition, and the court sustained the exceptions. On the trial a jury was waived, and the cause submitted to the court on the law and the evidence. The judgment was for the defendants and the intervenor.

Courts of equity, as well as courts of law, have apparently found more or less difficulty in giving interpretation to deeds of assignment, mortgages, and other instruments of writing intended to operate as security for the payment of money, or the performance of some act by the mortgagor. The definition of a mortgage, as given by Chancellor Kent (4 Kent's Com., 136), is brief and comprehensive. It is said to be "the conveyance of an estate or property by way of pledge, for the security of a debt, and to become void on payment of it." But the courts have said that any instrument of writing purporting to be a deed for real property, however absolute it may appear upon its face, if given only in security for the payment of debt, must be regarded merely as an equitable mortgage. On the other hand, the courts have said that when insolvent or other debtors convey their property to their creditors, in payment or discharge of their debts, such instruments are to be regarded as assignments, and belong to the most extensive class. (3 Sumner, C. C., 345; 10 Paige, Ch., N. Y., 445; 1 N. Y., 101; 20 Ga., 44.)

When not in conflict with bankrupt or insolvent laws, priorities and preferences in favor of particular creditors are upheld by the courts. Many authorities might be here cited, from Massachusetts, Maine, Indiana, Pennsylvania, New Jersey, Illinois, Georgia, Maryland, New Hampshire, Connecticut, Mississippi and Florida, as well as from the Supreme Court of the United States. But the controversy here arises from the character of the instrument itself. It is not objected to because of any unfairness, or want of equity, nor that it is in any way inimical to the statute of frauds. The instrument in question contains all the attributes of a good assignment. The creditors preferred, together with the several amounts due them, are all named in the recitals of the deed. The deed confers a full and absolute power on the trustees, to sell and dispose of the lands; to make deeds to purchasers; to receipt for purchase money, and apply it to the uses expressed in the deed; to do and perform every act which Oldham himself could have done, had he never executed the deed.

Mere mortgages do not contain such powers; and if this class of instruments is to be upheld by the courts at all, not only should the rules of law, but the rules of common sense, be applied to them. It certainly will not be contended that Oldham himself had retained any power of revocation; the power was coupled with the use, and was irrevocable to all intents and purposes so long as Oldham lived. Can it be, then, pretended upon any principle of common law, that the power was revoked by his death? In the case of Robertson v. Paul, the instrument was declared to be a mortgage, and it was postponed in favor of certain claims preferred by the statute, such as funeral expenses, expenses of last illness, of administration, and

the allowance to the widow and minor children. It may be that the court decided this case properly. The opinion is prepared by that eminent jurist, Judge Wheeler. He characterizes the instrument as a mere mortgage, and quotes from Story's Equity Jurisprudence, and shows how the custom of inserting a power to sell in a mortgage sprang up in England. We must confess that the quotation from 3 Kent's Com., 147, as found in the opinion, does appear to announce a doctrine at variance with the opinion, to-wit: "These powers fall under the class of powers appendant or annexed to the estate, and they are powers coupled with an interest, and are irrevocable; and being part of the mortgage security, they rest in any person, by assignment or otherwise, who becomes entitled to the money secured to be paid." Mr. Justice Wheeler says: "It is clear the death of the mortgagor would not operate a revocation of the power. Whether the statute governing the settlement of the estates of decedents will cause it to have that effect, is the question to be determined." And the learned court declare the opinion that it will.

It is not necessary for the purposes of this case that we should overrule the opinion in the case of Robertson against Paul. But we here call the attention of the profession to the case, and invite consideration and argument, whenever a proper case shall come before us in which to consider the rule therein laid down. And, *argumenti gracia*, we will suppose that we have a statute which, upon the death of the grantor of a deed of trust, operates a revocation of the power to sell, and actually postpones the lien to other claims upon the estate. Now this lien is a matter *ex contratu;* there are vested rights secured under it; a power irrevocable, coupled with an interest, has been granted. This power

is a part of the mortgage security; it vests by assign-
ment in any person entitled to the money to be paid.
Does not this statute, then, with the construction put
upon it in Robertson v. Paul, divest the right secured
by contract? And if so, is it not repugnant to the
tenth section of the first article of the Constitution of
the United States?

We think the mind of the court was led to the con-
sideration of this case in the light in which we view it,
when, considering the case of Caton v. Mosely, 25
Texas, 374. But up to the present the case has not
been overruled. In Caton v. Mosely, the court say:
"Whether or not the principle of the decision, in the
case of Robertson v. Paul, is applicable to assignments
in trust for the benefit of creditors, is a question which
we do not think necessary to decide in this case,
although it is not supposed to present any difficulty."

This question we must decide, and we adopt the lan-
guage of our predecessors, and say it is not supposed to
present any difficulty. And we hold that the principle
decided in that case is not applicable to assignments in
trust for the benefit of creditors, and therefore does not
apply to the case at bar. In Caton against Mosely, the
court drew a plain distinction between assignments to
trustees for the benefit of creditors, and the ordinary
deed of trust in common use. They say it may be con-
sidered as well settled, that every valid assignment for
the benefit of creditors must declare the uses to which
the property assigned is to be applied, and must settle
the rights of creditors under it, and not leave to the
assignee, or reserve to the assignor himself, the right of
subsequently doing so.

This is sound law, and the proposition is equally in-
controvertible that, when the instrument contains all
these necessary attributes, it is to be regarded as a valid
assignment.

This court has on different occasions acknowledged the validity of deeds of this character, drawing the distinction between assignments and mortgages. (See Baldwin v. Peet, Simms & Co., 22 Texas, 708; Vanhook v. Walton, 28 Texas, 71, 72.) In this case we think there is no difficulty, as the deed contains every attribute necessary to a valid assignment, and must be held as vesting the equitable and legal title in the plaintiffs.

In this view of the case, it is perhaps wholly unnecessary for us to decide upon the second ground of defense made to the deed as a mortgage. Our opinion in the case of Crawford v. Bender, decided at the last term of the court, contains our construction of the forty-third section of the twelfth article of the present Constitution of the State; but it may not cover the precise question here presented. We need, however, only say, in order to be understood in this case, that we regard every statutory limitation as coming within the purview of that clause of the Constitution.

A jury having been waived below, and the case being now before us for final adjudication, we do order, adjudge, and decree, that the appellants do have and hold the property described in the petition, subject to the uses and trusts declared in the deed of July 10, 1865; that all subsequent sales or encumbrances, made by the appellees, be set aside and held for naught; and that the appellants recover their costs in this behalf expended.

REVERSED AND RENDERED.