## H. H. McLane v. Mary C. Paschal.

1. DEED OF TRUST—MORTGAGE.—It is now finally and definitely settled by this court, that a deed of trust to secure the payment of a debt, .does not operate as an absolute transfer of the property, on which it is executed, to the trustee, upon the trust mentioned in the deed, defeasible upon the conditions therein stipulated; but that such instrument is, in legal effect, a mere mortgage, with a power to sell.

2. DEED OF TRUST—POWER, EXECUTION OF—ESTATES OF DECEDENTS. —Though the death of the party, by whom a trust-deed is executed, does not revoke the power to sell, yet its exercise by the trustee would be inconsistent with our statutes governing the settlement of estates of deceased persons; and whatever rights are secured to a creditor by such a deed, they can only be enforced after the death of the debtor, through the courts.

3. DEED OF TRUST—ESTATES OF DECEDENTS.—A deed of trust, upon the death of the party by whom it was executed, only secures the creditor, for whose benefit it was made, priority over such claims against the debtor's estate, as by the statute it is entitled to in the due course of administration.

4. DEED OF TRUST—LIEN—ESTATES OF DECEDENTS.—A specific lien on property, (except a lien for purchase-money,) created in the lifetime of the decedent, cannot be discharged out of the assets of the estate until the expenses of the last sickness, the expenses of administration that are incurred in the management and preservation of the estate, as well as the allowances authorized to be made to the widow

and children in lieu of homestead and other property exempt from forced sale, have been satisfied.

5. Deed of trust—Homestead—Forced sale.—Since the execution of a trust created by trust-deed can only be enforced through the medium of the court, it follows that a sale thus effected would be a forced sale; and if the property conveyed by the trust-deed is a homestead, the Constitution prohibits it from being thus sold. From this it results, that if the wife joined in the trust-deed to the homestead during her husband's life, and his estate should be insolvent, she is relieved, after his death, from a contract binding on her while her husband lived, and takes an absolute title to the homestead, notwithstanding the former unsatisfied incumbrance.

6. Homestead—Estates of decedents—Parties.—In April, 1859, I. P. and his wife, M. P., executed a deed of trust, to secure the payment of a debt, on property within the limits of the city of San Antonio, described as follows : " Being the entire homestead of the said I. P. and M. P., and including about seven acres under a plank and paling inclosure, and being separated from the convent grounds, on the south, by a street, and bounded on the east by a street, and running between the land herein conveyed and the said convent grounds and the garden on the river, of the said I. P. and M. P." M. P., after the death of her husband, applied to the court to have " the property mentioned in the inventory as the homestead, to wit, blocks 27 and 31, in upper San Antonio, set aside to the use of the widow," which, though resisted by the trustee, was done by order of the court, there being no evidence what particular property was occupied as a homestead when the order was made : *Held*—

1. When a party seeks to withdraw from the hands of the administrator, and the control of the court, a part of the property of an estate, it should be made to appear, from the inventory, or otherwise, not only that the party for whom the order is asked, is entitled to it, but the administrator, as the general representative of the estate, should be made a party.

2. The extent and boundaries of the homestead should have been more definitely shown than was done in the application; and the fact that the property claimed was, in truth, the homestead, should have been established.

3. The fact that a piece of ground was designated in the trust deed as a garden, does not raise the necessary inference that it was a part of the homestead.

4. The court erred in setting aside, as part of the homestead, the lot of ground designated as a garden.

Appeal from Bexar. Tried below before the Hon. George H. Noonan.

On the 22d of April, 1859, I. A. & G. W. Paschal executed their joint and several promissory note to William McLane, for $7,000, due in twelve months, with twelve per cent. interest.

On the same day, the Paschals, with the appellee, Mary C. Paschal, wife of the said I. A. Paschal, to secure the payment of the indebtedness, executed and delivered a trust deed. (The language in which the trust property was described in that trust deed will be found in the syllabus of this case—6.)

It would seem, from the recitals in the trust deed, that the debt was really the individual debt of I. A. Paschal. This trust deed included in the property incumbered what was then known as the homestead, in the city of San Antonio, of I. A. and Mary C. Paschal, being blocks 27 and 31, in upper San Antonio; also two and one half acres, used as a garden, and adjoining the homestead, a street intervening.

I. A. Paschal died in 1868. His estate was administered upon in Bexar county. The debt was presented, and approved as a just claim against the estate, on the 30th September, 1868.

At the September Term of the Probate Court, Mrs. Paschal filed her petition, praying the court to set aside to her the homestead, as well as other allowances. Objection was made, on the part of McLane, to any order setting aside the homestead. Issue was joined in the Probate Court, which, by its judgment, refused to set aside the property claimed as a homestead, and sustained the objections of McLane. From this judgment, Mrs. Paschal appealed to the District Court, which set aside the judgment of the Probate Court, and proceeded to decree the homestead to Mrs. Paschal, as well as the two-and-one-half-acre garden lot. The court also proceeds to set aside, cancel, and hold for naught all title, claim of title, lien, or security on said property set up by McLane by virtue of the trust deed. In the mean time, William McLane had died, and H. H. McLane, who became the owner of the claim, made himself a party to the suit, and

prosecuted this appeal from the judgment of the District
Court.

The statement of facts shows that all other lawful allow-
ances and exemptions were made by the Probate Court to
Mrs. Paschal.

*T. T. Teel,* for appellee.—The homestead cannot be sold
under a deed of trust after the death of the husband. (Rob-
ertson *v.* Paul, 16 Tex., 474; Smith *v.* Elliott, 39 Tex., 201;
Wood *v.* Wheeler, 7 Tex., 13; McCreery *v.* Fortson, 35 Tex.,
648; Baxter *v.* Dear, 24 Tex., 21.)

The deed of trust of Paschal and wife to McLane is void,
because the acknowledgment of Mrs. Paschal is not in con-
formity to law. (Paschal's Dig., art. 1003; see the Record,
p. 14, and the opinion in Smith *v.* Elliott, *supra;* Cross *v.*
Everts, 28 Tex., 532; Roy *v.* Bremond, 22 Tex., 627; Cal-
lahan *v.* Patterson, 4 Tex., 67; Nichols *r.* Gordon, 25 Tex.
Supp., 112.)

The learned counsel for the appellant complains that more
was set aside by the court than was claimed by Mrs. Paschal.
We think he errs in this. In her petition, Mrs. Paschal asks
the court to set aside her homestead, situated in San Anto-
nio, and claimed by her as such. This is the description of
the homestead.

There was sufficient evidence for the court to render the
decree. This court will see that the metes and bounds are
definitely described.

The homestead vests in the heirs or the head of the family
upon the death of either the husband or wife. "In no event
can it be converted to the use of creditors. They have no
interest in such property." (Sossaman *v.* Powell, 21 Tex.,
665.)

The principles involved in this case have been settled by
our own courts, and we believe that this court will not dis-
turb the repeated decisions. We call the attention of the

court to the authorities collated in the exhaustive chapter on HOMESTEADS, in Paschal's Digest of Decisions, secs. 14537, 14636.

*S. G. Newton,* for appellant.

MOORE, ASSOCIATE JUSTICE.—With whatever force of reason those who have sought to maintain a different conclusion have endeavored to impress their views, and however unsatisfactorily, as it may seem to them, their arguments may have been met, it must be admitted that it is now finally and definitely settled by this court, that a deed of trust to secure the payment of a debt does not operate as an absolute transfer of the property to which it refers, to the trustee, upon the trust mentioned in the deed, defeasible upon the conditions therein stipulated; but that such instrument is, in legal effect, a mere mortgage, with a power to sell. And though the death of the mortgagor does not, on general principles, revoke this power, yet its exercise by the trustee would be inconsistent and in conflict with our statutes governing the settlement of estates of deceased persons. It cannot, therefore, be executed by the trustee after the death of the constituent. And whatever rights may be secured to the creditor by such deed, they can only be enforced after the death of the debtor, through and by aid of the court. It naturally, if not inevitably follows, that such deed, instead of operating as an absolute and unconditional security for the payment of the debt for which it purports to be given, has this effect only during the life of the debtor. And after his death it only secures the creditor priority over such claims against the debtor's estate, as by the statute it is entitled to in the due course of administration.

And it is not now open to controversy that funeral expenses, expenses of last sickness, expenses of administration, and those incurred in the preservation and management of the estate, as well as the allowances authorized to be made

to the widow and children in lieu of a homestead, and other property exempt from forced sale, where such property does not exist in kind, have preference over specific liens created in the lifetime of the decedent, except where such lien is a security for the purchase-money of the property to which it is attached.

Whether the fact that the wife may have joined her husband in creating the lien (I refer, of course, to cases under the former law) will bar her from claiming such allowance in preference to the creditor, has not, so far as I am aware, been directly passed upon by the court. And it will be time enough to consider it when it arises. Here, although the wife joined the husband in the deed of trust, as the power of the trustee is revoked, the property can only be now sold by an order of the court. But this would be a forced sale; and if the property is the homestead, the court is forbidden by the Constitution from having it thus sold; and thereby, if the estate is insolvent, the woman is relieved from a contract which was absolute and binding upon her while her husband was living, but takes an absolute title to the property, notwithstanding the incumbrance with which she has freely and voluntarily joined her husband in charging it.

It follows, as a necessary conclusion from these propositions, that the court did not err in holding that the deed of trust to French afforded no valid ground for rejecting appellee's application to set apart to her the homestead. (Robertson v. Paul, 16 Tex., 472; Buchanan v. Monroe, 22 Tex., 537; Giddings v. Crosby, 24 Tex., 295; ·Caton v. Mosely, 25 Tex., 374; Dwight v. Overton, 35 Tex., 390; Donley v. Cundiff, 35 Tex., 741; King v. Cassidy, 36 Tex., 531; Gurley v. Ward, 37 Tex., 20; Petty v. Barrett, 37 Tex., 84; Reeves v. Petty, 44 Tex., 249; Mayman v. Reviere, 47 Tex., 357, overruled during the present term of the court.)

But although the superior right of the widow to the homestead over that of the creditor, by virtue of· the specific lien which she had joined her husband in charging upon it, can-

not be denied, still the record does not, in our opinion, establish, with sufficient certainty to support the judgment, the fact that all the property included in the decree was a part and parcel of the homestead at the time of the decedent's death.

When an application is made to the court to set apart the homestead for the use of the widow and children, it is unquestionably incumbent upon the applicant to show, *prima facie* at least, that it is the duty of the court to make the decree asked for. Unquestionably, no particular formality or strict rules of proceeding in such application is required, or has been usually observed; but where a party seeks to withdraw from the hands of the administrator, and the control of the court, a part of the property of the estate, it should be made to appear to the satisfaction of the court, from the inventory, or otherwise, not only that the party for whom the order is asked is entitled to it, but also that the particular property asked to be set aside is the character of property to which the party is thus entitled. The order, when made, is a judgment of the court, and binding upon all parties interested in the estate, whether contesting it or not, until revoked or set aside in some legitimate mode provided by law. It would, therefore, seem that the administrator, as the general representative of the estate, should be a party to, or have cognizance of the application.

The extent, or definite boundaries of the homestead, should have been more definitely shown than was done in this application, if objection had been made. And although it may not be necessary for the applicant to show the value of the property constituting the homestead, unless where opposition to an order to set it apart is made upon the ground that it is in excess of the constitutional exemption, yet, unquestionably, in many cases, this may be a matter of vital importance; and the fact that the property claimed is in truth the homestead, should certainly be shown before the order setting it apart should be made.

The County Court refused the application, and, so far as we can see from the transcript, there was no evidence before the District Court to show that the property set aside for appellee was in fact the homestead, except its description in the trust deed to French, made some years before the husband's death. The inference to be drawn from the deed would seem to be, at the date of its execution, that the grantors did not regard the lot designated as the garden, as forming any part of their homestead. And it certainly cannot be said, because it had been used for and spoken of by the grantors in the deed as their garden, that it is a necessary inference or conclusion of law that it was a part of their homestead: Nor are we prepared to say, if such was clearly their intention, that the husband and wife might not under the law, as construed at the date of this deed, have curtailed their homestead, and applied a portion of it to other purposes, without absolutely parting with the title; and if they should do so, *bona fide*, that the wife would not be precluded, if they still retained the homestead as they themselves had limited and defined it, from claiming that which had been thus severed from it, as still forming a part of it. But if not, certainly the admissions in their deed, that a designated lot separated by a street from the premises on which they lived, formed no part of their homestead, would be evidence tending to prove that such lot was in truth no part of it. And although the deed upon which appellant relies to repel appellee's right to a homestead may not be so clear and unequivocal as to warrant the exclusion of parol testimony to prove that the garden lot was in fact a part and parcel of their homestead, at the date of said deed, and was not used and treated as a part and parcel of it at the time of the husband's death, it evidently warrants this inference, in the absence of explanatory or countervailing evidence, that it was so treated or regarded by the grantors. The court, therefore, erred in setting it apart to appellee as a part of the

homestead, in the absence of any testimony whatever, so far as we can see in the record, to support her application.

The error into which the court fell resulted, in all probability, as it seems from the statement of facts, from its attention being exclusively attracted to appellant's claim to have the homestead sold for the satisfaction of his debt; while the essential question in the case before the court was, whether appellee had established her right to an allowance of the homestead, and, if so, what was its extent or boundary.

The court also erred in decreeing the cancellation of the trust deed. This was altogether unnecessary to secure appellee in her homestead rights; and there was no pleading calling for or warranting the action of the court in this particular.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.