# JUNE, 1912.

ROBERT P. WIENER ET AL. v. MARY A. ZWEIB.

No. 2177.    Decided December 20, 1911, June 5, 1912.

**1.—Homestead—Administration—Trust Deed—Revocation of Power.**

Under the probate law in force in 1874 (Act of Aug. 15, 1870, sec. 26) the homestead formed no part of the estate of a deceased person where a constitutent of the family survived. Not being subject to administration, the laws for the settlement of estates presented no reason for suspending the execution of a power of sale in a trust deed given by deceased on such homestead, and not revoked by his death because coupled with an interest. A sale and conveyance of the property by the trustee in pursuance of such power, after the death of the grantor and before the time for taking out administration had expired passed title to the purchaser. (Ruled on motion for rehearing.) (Pp. 281, 282.)

**2.—Same.**

The original opinion based its conclusion on the following rulings by Mr. Justice Dibrell, Mr. Chief Justice Brown concurring, Mr. Justice Ramsey dissenting:

(1) A power of sale given in a trust deed to secure a debt, being coupled with an interest, survives the death of the constitutent, and, though suspended by administration on his estate, may be executed in the absence thereof. Sale and conveyance made thereunder was not void, but only voidable in case of administration. After the four years allowed for taking out administration expired without same being opened, it was no longer voidable. (Pp. 267-272.)

(2) The trustee's deed made after the death of the constitutent and before expiration of the time within which administration might have been taken out on his estate, was valid and effective at once, and passed title to the land conveyed, subject only to be set aside by an administration for the payment of such preferred claims as existed under the law at the time, or as such deed might have interfered with the orderly administration of the estate. (P. 272.)

(3) The heirs of the constitutent who gave the power of sale were not entitled, as such, to raise the question as to the right to execute the power after his death. It could be questioned only in case of administration and by the administrator. (P. 274.)

### 3.—Homestead—Protection from Forced Sale.

Under the Constitutions of 1845 and 1866, the husband and wife could mortgage the homestead and it could be sold for the debt under powers created by them in a trust deed. (Pp. 274, 275.)

### 4.—Homestead—Mortgage—Constitution—Husband and Wife.

Under Texas Constitutions prior to that of 1876, mortgages or trust deeds on the homestead were not declared void. If given by the husband and wife they could be enforced. If created only by the husband without the wife's consent, they were not enforcible while the homestead right continued, but became so when it was lost by abandonment or by death without the survival of one entitled to assert it. (Pp. 274-276.)

### 5.—Homestead—Community Property—Surviving Children.

Where the homestead is community property, the surviving husband has the right to sell or mortgage it for community debts; the children have no homestead rights therein which would prevent such disposition of it. (Pp. 276, 278.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Harris County.

Wiener and others sued Zwieb for recovery of land. Defendant had judgment which was affirmed on plaintiffs' appeal, whereupon they obtained writ of error.

*L. B. Moody* and *E. T. Chew*, for plaintiffs in error.—A sale made by a trustee, under a power of sale contained in a deed in trust, after the death of the grantor, and less than four years after such death, is void, and passes no title. Robertson v. Paul, 16 Texas, 472.

The uncontradicted evidence showing that the property in controversy had been the homestead of Henry Wiener and his wife for many years prior to January 1st, 1868, it did not lose its homestead character by reason of the fact that about one year prior thereto they had temporarily moved closer in town for the purpose of sending their children to school, the uncontradicted evidence showing further that they at all times intended to return to it as their home, which intention continued until the death of each of them, and that they never acquired any other home. Thomas v. Williams, 50 Texas, 273; Shepherd v. Cassiday, 20 Texas, 29; Gouhenant v. Cockrell, 20 Texas, 97; Cross v. Everts, 28 Texas, 532; Cline v. Upton, 56 Texas, 322;

Foreman v. Meroney, 62 Texas, 727; Garner v. Black, 95 Texas, 125; Baum v. Williams, 16 Texas Civ. App., 407; Samons v. Shaw, 66 Texas, 655; Aultman & Co. v. Allen, 33 S. W., 679; Harbison v. Tennison, 38 S. W., 232; Farmer v. Hale, 37 Texas Civ. App., 73; Graves v. Campbell, 74 Texas, 579; Scott v. Dyer, 60 Texas, 135.

The uncontradicted evidence showing that the property attempted to be conveyed by said deed in trust was the homestead of Henry Wiener and his wife, Hannah Wiener, and that his wife did not join with him in its execution, or give her consent thereto, said deed of trust is void, and ought not to have been admitted in evidence. Same authorities.

The mortgage under which appellees claim title, is void, and the sale under it conveyed no title, because the property attempted to be conveyed by it was the homestead of Henry Wiener and his wife, and the wife did not join in it, but it was executed by Henry Wiener alone, without his wife's consent, and against her protest. Thomas v. Williams, 50 Texas, 273; Sampson v. Williamson, 6 Texas, 102; Hollis v. Francois & Border, 5 Texas, 202; Lee v. Kingsbury, 13 Texas, 71; Stewart v. Mackey, 16 Texas, 57; Clements v. Lacy, 51 Texas, 161; Campbell v. Elliott, 52 Texas, 157; Inge & Boring v. Cain, 65 Texas, 77; Whitmire v. May, 96 Texas, 317; Stallings v. Hullum, 89 Texas, 433; Rogers v. Renshaw, 37 Texas, 625; Whetstone v. Coffey, 48 Texas, 277; Hair v. Wood, 58 Texas, 79; Hall v. Dotson, 55 Texas, 524.

The property being the community homestead of Henry and Hannah Wiener, and she not having joined in the mortgage under which appellees claim, and having died prior to the sale thereunder, and the property continuing to be her homestead up to the time of her death, her community one-half interest in the property was inherited by her children upon her death, and could not be affected by the subsequent sale under the mortgage. Mortgage Co. v. Thedford, 27 Texas Civ. App., 155; Stallings v. Hullum, 89 Texas, 431; Beale v. Ryan, 40 Texas, 406; Clements v. Lacy, 51 Texas, 161; Whetstone v. Coffey, 48 Texas, 277, 278; Hair v. Wood, 58 Texas, 77.

In insolvent estates, upon the death of the husband or wife, or both, the homestead vests immediately in the remaining constituents of the family, free from any and all claims of creditors. Green v. Crow, 17 Texas, 190; Zwerneman v. Von Rosenburg, 76 Texas, 525; Childers v. Henderson, 76 Texas, 664; Horn v. Arnold, 52 Texas, 161; Reeves v. Petty, 44 Texas, 249; Sossaman v. Powell, 21 Texas, 664; Lacy v. Lockett, 82 Texas, 190; Cameron v. Morris, 83 Texas, 14; McLane v. Paschal, 47 Texas, 370; Black v. Rockmore, 50 Texas, 99; Armstrong v. Moore, 59 Texas, 646; Griffie v. Maxey, 58 Texas, 214.

*Fisher, Sears & Campbell, A. R. & W. P. Hamblen*, and *Gill & Jones*, for defendant in error.—Even if the property was homestead, on which Wiener executed the deed of trust on January 1st, 1868, the deed of trust was neither void nor voidable, but was a valid lien, capable of enforcement. Inge v. Cain, 65 Texas, 77; Stewart v. Mackey, 16 Texas, 56; Bomback v. Sykes, 24 Texas, 217; Sampson v.

Williamson, 6 Texas, 102; Speer Law of Married Women, sec. 262, p. 279.

The deed of trust being a valid lien on the land, and it not being occupied or used as a homestead when the deed of trust was given, or when the trustee sale was made, the title passed to the purchaser by the trustee sale. The lien having been foreclosed without a "forced sale," after the death of the wife, and when the property was not used as a homestead, the sale was valid and effective. Inge v. Cain, 65 Texas, 78; Stewart v. Mackey, 16 Texas, 56; Lee v. Kingsbury, 13 Texas, 69; Bomback v. Sykes, 24 Texas, 217.

If Mrs. Hannah Wiener had any homestead rights in the property, they did not survive after her death, so as to vest a homestead right in her children. Upon her death the children inherited from her, subject to the lien upon the property, which was a valid community debt, and which was properly foreclosed against the husband. Shannon v. Gray, 59 Texas, 251; Brewer v. Wall, 23 Texas, 585; Tadlock v. Eccles, 20 Texas, 782; Allison v. Shilling, 27 Texas, 454; Ashe v. Yungst, 65 Texas, 636. That the property being community property and the lien valid, the sale after death of wife passed title. Carter v. Connor, 60 Texas 53; Boyd v. Ghent, 93 Texas, 548; Thompson v. Jones, 12 S. W., 77.

If the property was homestead when the deed of trust was made, and it was unenforcible while claimed as homestead, the undisputed testimony shows that Wiener had abandoned it as homestead before the sale was made, and the deed of trust was valid, and the sale passed title. Jordon v. Imthurn, 51 Texas, 288; Irion v. Mills, 41 Texas, 310; Wynne v. Hudson, 66 Texas, 1; Brewer v. Wall, 23 Texas, 585; Portwood v. Newberry, 79 Texas, 337; Marler v. Handy, 88 Texas, 421. Burden on appellant to show homestead right: Bell v. Greathouse, 20 Texas Civ. App., 482. The right to determine homestead is not dependent on the will of the wife: Slavin v. Wheeler, 61 Texas, 659. The place not being occupied, and Wiener consenting to sale, it was an abandonment, and worked estoppel: 21 Cyc., p. 614; Ranney v. Miller, 51 Texas, 269.

The property in question was no part of Wiener's estate and could never have been subject to any sort of claim unsupported by a valid lien thereon. 6 Gam. Laws, 144; Act of Aug. 16, 1870, sec. 26. It follows therefore that it would have been impossible, either within the four years or thereafter for the defendant in error to have enforced a lien or claim through the probate court. This concession emphasizes the force of our contention that the reason given by the courts for the suspension of the power of sale after the death of the constituent did not exist in this case, and in the absence of the reason for the rule, the rule itself was clearly inapplicable.

MR. JUSTICE DIBRELL delivered the opinion of the court.

Robert P. Wiener, John W. Wiener and Henry B. Wiener a minor, suing by his next friend, Robert P. Wiener, brought this suit on December 3, 1907, against Mary A. Zwieb to recover 10⅓ acres of land, situated within the corporate limits of the City of Houston. The action was one of trespass to try title. Pending the suit the

original defendant, Mary A. Zwieb, died intestate and an administration was sued out on her estate. A certain deed of trust executed by Mary A. Zwieb to Mrs. E. J. Ferguson on the land in controversy was duly foreclosed and at the foreclosure sale purchased by Mrs. E. J. Ferguson, and she and her husband, John H. Ferguson, were by amended petition made the defendants in lieu of the original defendant.

The cause was tried in the District Court of Harris County with a jury, and the trial judge, after hearing the evidence, instructed a verdict for the defendants.

Upon appeal the cause was, on April 27, 1910, affirmed by the Court of Civil Appeals of the Fourth Supreme Judicial District, and is before this court on writ of error.

All parties to the suit claimed the land through Henry Wiener as the common source, and the issue of title mainly, if not solely, depends upon the validity of a sale of the land in controversy under a deed of trust executed by Henry Wiener on said land during the lifetime of his wife and while the property was their homestead, and without the signature of the wife. We make this summary of the issue involved in the case in deference to the chief complaint made by the plaintiffs below and the findings of fact by the Court of Civil Appeals.

The complaint of plaintiffs below is to the action of the trial court in instructing a verdict for defendants, the contention being that there was conflicting evidence upon a number of material issues and that these issues should have been determined by the jury. The Court of Civil Appeals found as matter of fact that there were a number of issuable questions which ordinarily should have been presented to the jury, but held as a matter of law that the refusal to submit such issues to the jury did not constitute reversible error for the reason that such issues of fact might be conceded to be in favor of plaintiffs and yet they furnish no reason why the plaintiffs should recover, or why the defendants should not recover.

One of the material issues of fact was as to whether Henry Wiener, the mortgagor, died before or after the deed of trust was foreclosed by the trustee or his substitute under the terms of the instrument. It was shown without controversion that on January 1, 1868, Henry Wiener, the father of plaintiffs, executed a deed of trust on the land in controversy to M. F. De Bajligethy, trustee, for the purpose of securing Mary Zwieb, the original defendant, in the payment of about seven hundred dollars, which was a community debt of Henry and Hannah Wiener, plaintiffs' ancestors. That at the time of the execution of this deed of trust the property in controversy was the homestead of Henry Wiener and his wife, who refused to join him in the execution of said deed of trust, but at the time the deed of trust was executed they did not live on the property. They had moved to the City of Houston, proper, for the purpose of educating their children, and had lived there since the latter part of 1866. Soon after Wiener and his family moved from the land in controversy the dwelling house was burned and was never rebuilt, and Wiener and his family never thereafter occupied the property. Mrs. Hannah Wiener died on

January 23, 1869, leaving her husband, Henry Wiener, and several minor children surviving her.  It was shown that these children, or some of them, lived with their uncle, Isaac Levy, on a portion of the property in controversy, in a house built there by Isaac Levy with the consent of Henry Wiener, for a number of years after the death of their mother, Hannah Wiener.  It was found by the Court of Civil Appeals that there was no administration on the estate of either Henry or Hannah Wiener, and that while there was no evidence of any probative force that Henry Wiener died before the deed of trust was foreclosed by sale by the substituted trustee, yet for the purpose of determining the question of law involved it was admitted that he died before the sale under the deed of trust, but it was also found that Henry Wiener never occupied or claimed the property as his homestead after the death of his wife, and when requested by the attorney of Mary Zwieb to pay the note, stated that he was not able to do so and that Mrs. Zwieb should proceed to foreclose the deed of trust he had given her.

On January 3, 1874, Judge E. P. Hamblin, the substituted trustee, proceeded to sell the land in controversy under the trust deed executed by Henry Wiener on January 1, 1868, and concededly after the death of the constituent.

This brings us to one of the main questions of law to be determined, as presented by plaintiffs' first proposition under their first assignment of error, as follows:  "A sale made by a trustee, under a power of sale contained in a deed in trust after the death of the grantor, and less than four years after such death, is void, and passes no title."

The Court of Civil Appeals, speaking through Justice Fly, in an elaborate and well considered opinion, holds the view that where there was no administration on the estate of the grantor and after the lapse of four years, the time within which an administration could be sued out, that a sale under the deed of trust after the death of the grantor and before the lapse of four years, was valid and passed title to the land conveyed, and we approve that holding.

This particular question will be considered first without reference to the questions of homestead and the validity of the deed of trust under the circumstances of its execution, as raised by plaintiffs' assignments of error.

As an independent and original proposition, we do not think it has ever been held in this State that the power to sell and convey property given in a mortgage or deed of trust was revoked by the death of the mortgagor or grantor, but on the contrary it seems to have been fully recognized by our court as an established principle of law that the power of sale given in such instruments was a power coupled with an interest and continued in force and survived the death of the constituent.  We are aware that in the case of Reeves v. Petty, 44 Texas, 252, this language was there used:  "Nor is it doubted that the doctrine laid down in Robertson v. Paul, 16 Texas, as to the revocation of the power to sell by the death of the constituent, has been questioned by some of our ablest lawyers.  This rule, however, was adopted by the same judges that decided the other cases referred to, and it has been approved by this court in subsequent cases, and has

become a rule of property, like the other, to an extent that it would be a great shock to society to disturb it.''

There was no issue involved in that case that called for a discussion of the subject of the revocation of the power of the trustee to sell after the death of the mortgagor or grantor. The statement of the case shows that Petty instituted the suit against the heirs of J. J. Reeves and wife, to subject the property in controversy in that suit to a deed of trust the ancestors had given in their lifetime, and there was never any administration on the estates of the decedents who had executed the deed of trust. There had been no sale by a trustee under the deed of trust, so that the discussion of the Robertson v. Paul case and the principles involved in the sale under the deed of trust after the death of the constituent was not necessary in any particular to the decision of the case then at bar and what was said on that subject must be treated as obiter. Certainly that case, in so far as it holds as an independent proposition that the death of the constituent in a deed of trust or mortgage with power to sell revokes the power of sale, has never been followed by any decision of this court that we have been able to find.

The early case of Robertson v. Paul, 16 Texas, 472, recognizes that in cases of deeds of trust and mortgages with power of sale, such power of sale is coupled with an interest and is not revoked by the death of the grantor or mortgagor, yet in view of the fact that our probate law enumerates certain claims which have preference by statute, generally speaking, over debts secured by mortgages or other liens, as funeral expenses and expenses of last sickness, expenses of administration, etc., the powers of sale in such mortgages and deeds of trust are suspended and held in abeyance; so as not to interfere with the orderly administration of estates, and where such administration exists such lien must be presented for allowance and payment by the administrator. The language used in that opinion with reference to the revocation of the power to sell given in deeds of trust or mortgages, after the death of the makers of such securities is as follows: ''On general principle, it is clear the death of the mortgagor would not operate a revocation of the power. Whether the statute governing the settlement of the estates of decedents will cause it to have that effect is the question to be determined. And we are of opinion that it will.''

From the foregoing statement and the subsequent reasoning by Judge Wheeler in that case it is clear that the court while stating that the effect of the statute governing the settlement of estates was to revoke the power of sale after the death of the mortgagor or grantor, the holding was not that such statute revoked the power of sale, but simply suspended or held its operation in abeyance.

The Supreme Court, in the case of McLean v. Paschal, 47 Texas, 365, seems to have gone a step further than the court in the Robertson v. Paul case, and on this subject said: ''And though the death of the mortgagor does not, on general principles, revoke their power, yet its exercise by the trustee would be inconsistent and in conflict with our statutes governing the settlement of estates of deceased persons. It cannot, therefore, be executed by the trustee after the death

of the constituent. And whatever rights may be secured to the cred-
itor by such deed, they can only be enforced after the death of the
debtor through and by aid of the court. It naturally, if not inevi-
tably, follows that such deed, instead of operating as an absolute and
unconditional security for the payment of the debt for which it pur-
ports to be given, has this effect only during the life of the debtor.
And after his death it only secures the creditor priority over such
claim against the debtor's estate as by the statute it is entitled to in
the due course of administration.''

In view of the doctrine laid down in McLean v. Paschal, it should
be noted that, from the statement of that case, it appears that I. A.
Paschal, joined by his wife, Mary C. Paschal, executed and delivered
to McLean a deed of trust on certain property in which was included
their homestead in the City of San Antonio. I. A. Paschal died in
1868, and his estate was administered upon in Bexar County, Texas.
On the 30th of September, 1868, the debt of McLean was presented
to the administrator of I. A. Paschal and by him approved as a just
claim against said estate. The widow, Mrs. Paschal, filed in the Pro-
bate Court her petition to have set aside to her the homestead, as well
as other allowances. McLean as a lien holder objected to any order
setting aside the homestead to Mrs. Paschal, and his objection was
sustained. Upon appeal by Mrs. Paschal to the District Court, the
judgment of the Probate Court was set aside and the homestead
decreed her. The judgment of the District Court formed the basis
of the decision of the Supreme Court in that case. The deed of trust
given McLean by I. A. Paschal and wife was not foreclosed after
Paschal's death and, so far as the record discloses, no attempt was
made by the trustee to foreclose the deed of trust by virtue of the
power of sale therein contained. It follows as a consequence that the
subject of revocation of the power to sell under that deed of trust was
not an issue in the case, and that the decision of the court on that
question was not essential to a proper disposition of the case. Ordi-
narily a decision on the question in a case not necessarily presented
will not be treated as binding authority, but merely as persuasive.

It may be safely said that in all the cases in this State prior to
the case of Rogers v. Watson, 81 Texas, 400, in which the question of
the revocation of the power to sell, given in mortgages and deeds of
trust, caused by death of the mortgagors or grantors, was properly
raised and decided, were cases where such sales had been made pend-
ing administration of the estates of such mortgagors or grantors, or
before the lapse of four years from the time of their deaths in which
an administration might be legally sued out. And it may be stated
with equal emphasis and assurance that in all such cases the reason
upon which such holding is based is, not that the death of the con-
stituent revoked the power of sale, but that such power is in effect
revoked by being suspended and held in abeyance so as not to inter-
fere with the orderly administration of the estates of decedents. But
whatever construction may be placed upon the decisions on this ques-
tion as announced prior to the case of Rogers v. Watson, we think
the rule there established and subsequently followed in a number of
cases in this court and in the Court of Civil Appeals, is founded on

the better reason and more in harmony with sound principle. For more than twenty years the rule laid down by this court in the Rogers case has been followed and extended as the exigencies of the varying circumstances of the case have presented themselves. In the case of Rogers v. Watson, 81 Texas, 400, certain property had been sold by a trustee under a deed of trust executed by John Rogers, and after his death, he having died intestate and no administration having been had on his estate. This was the first time the precise question was ever presented to this court, so far as we have been able to ascertain, and Judge Gaines, then associate justice, rendered the opinion for the court in his customary clear and forceful style, and in part said: "We are of the opinion that if the trustees in the deed of trust executed by the vendees to secure the payment of the purchase money of the land had the power to sell the land, notwithstanding the death of Rogers, the allegations in the petition show title in the plaintiffs to the land in controversy, and the court did not err in overruling the defendant's demurrer thereto. At an early day it was held, in the case of Robertson v. Paul, 16 Texas, 472, that a sale made in pursuance of a power given in a mortgage after the death of the mortgagor was void, although the mortgage was given to secure the payment of the purchase money of the mortgaged premises. That decision has been followed in subsequent cases in the courts and may now be regarded as settled law. McLean v. Paschal, 47 Texas, 365; Black v. Rockmore, 50 Texas, 94; Abney v. Pope, 52 Texas, 288. In Black v. Rockmore, at the time of the sale under the power the widow of the deceased mortgagor had filed a bond and inventory under the statute and was administering the community estate as survivor. In Robertson v. Paul, and in the other cases cited, there were regular administrations pending at the time of the sale. The sales were not held void upon the ground that the death of the mortgagors had revoked the power, because it was recognized that the powers were coupled with an interest, and that they remained in force after the death of the respective constituents. But the exercise of the powers after such deaths and during an administration upon the mortgagors' estates was regarded as inconsistent with our statutes, which give to certain classes of claims against a decedent's estate priority of payment over a debt secured by a lien, even as to the property subject to the incumbrance. But in this case, according to the allegations of the petition, at the time of the sale, more than four years had elapsed from the date of Rogers' death and no administration had ever been had upon his estate. Under the statute as it then existed and now exists, after a lapse of four years from the death of the person the Probate Court lost its power to grant letters of administration upon his estate. Rev. Stats., art. 1827. Consequently the provisions of the statute for establishing and ranking claims against an estate were no longer an obstacle to the sale. The debt being the purchase money promised to be paid, the holders of the notes were entitled to a preference in payment over all other claims whatever. Therefore the reason for the rule laid down in the cases cited no longer existed, and we are of opinion that the rule itself should be held no longer applicable. After the time had passed within which

letters of administration could be granted upon Rogers' estate, the debt being for vendor's lien and no claim having priority over it as to the mortgaged premises, we see no good reason why the power which had been in abeyance did not immediately become effective, and why the sale did not pass title to the property in controversy.''

Following the Rogers v. Watson case and upon the soundness of the doctrine there stated, come other cases. In the case of National Exch. Bank v. Jackson, 33 S. W., 277, the Court of Civil Appeals laid down this proposition: ''The sale of the land by the trustee under the deed of trust executed by John J. Eakins to J. J. Ellis, as trustee, to secure the indebtedness to Mrs. White, was valid, and conveyed the title to the purchaser, Daugherty, although Eakins was dead at the time of said sale. The death of Eakins only suspended the power of the trustee until the courts might administer the property. Mrs. Eakins being the sole executrix and legatee of the property, and having appropriated the property to her use, the powers of the trustee were revived, and he was authorized to sell.''

It is not shown in the statement of the case how long John J. Eakins, the grantor in the deed of trust had been dead, but in view of the fact that his widow was made sole legatee and had appropriated the property was sufficient to revive the power of sale.

In the case of Silverman v. Landrum et al., 19 Texas Civ. App., 402, 47 S. W., 404, the Court of Civil Appeals, following the Rogers v. Watson case, laid down this proposition on the subject under discussion: ''The death of Samuel Landrum did not affect the power to sell under the deed of trust. The time in which administration upon his estate might have been taken out had expired. So the right of the heirs to have the estate settled under our probate laws was not interfered with.''

In the case of Gillaspie v. Murray, 27 Texas Civ. App., 580, 66 S. W., 252, the Court of Civil Appeals, following the same case, announced this proposition: ''More than four years having elapsed after the death of J. H. Murray, without any administration having been taken out upon his estate, the power to sell under the deed of trust could be executed. The power to sell given in a deed of trust is a power coupled with an interest, and is not revoked by the death of the constituent, but its exercise has been held to be inconsistent with the administration of the probate law of this State. After the expiration of the four years allowed for taking out letters of administration, the reason for denying the exercise of the power ceases.''

The case of Taylor v. Williams, 101 Texas, 388, is strongly in point in the case at bar. In that case the assignee of the mortgagor died, and left a will in which he appointed an independent executor and, pending such independent administration, the trustee in the deed of trust executed by Williams' assignor of the mortgaged property, was proceeding to sell under the terms of the deed of trust, when the independent executor and others interested in the mortgaged property brought suit to enjoin the threatened sale of the property by the trustee in the exercise of the power conferred by the deed of trust. The question presented in that case for decision was not whether the death of the assignee of the mortgaged property, who

stood in the same relation as to the revocation of the power to sell under the deed of trust as did the grantor, but whether an independent administration was such an administration as would, by force of the probate law, extinguish or supersede the power of the trustee in the deed of trust to sell. Judge Williams, in that case, rendered a clear and strong opinion holding that the death of the assignee of the grantor who was treated as the grantor, did not revoke the power to sell, and that an independent administration was not the kind of an administration which would suspend the power of sale by the trustee.

From the authorities in this State it may be said the law is now definitely settled that the death of the grantor in a deed of trust authorizing the sale of the property by a trustee, or the death of the assignee of such grantor of the property pledged, does not revoke the power of the trustee to sell the mortgaged property. That such power to sell, under the circumstances just mentioned after the death of the grantor, is suspended in such manner as not to interfere with the orderly administration of the estate of such decedent, and where the time in which an administration may be sued out has expired, or when the administration is had independent of the Probate Court, the power to sell theretofore held in abeyance is revived and may be exercised. Thus far the courts of this State have definitely settled the law. In the case at bar, where the sale under the deed of trust was made after the death of the grantor and before the expiration of four years within which time an administration might have been sued out, but where no administration was in fact ever sued out, the Court of Civil Appeals held that the trustee deed, like the power of sale, was held in abeyance until the expiration of the four years from the date of the grantor's death, but upon the lapse of such period became effective and passed the title to the purchaser at such sale. We think that court was right in its solution of that question, with this addition and modification. The trustee's deed made after the death of the constituent and before the lapse of the time within which an administration might have been sued out on the estate of the grantor, was valid and effective and passed the title to the land conveyed, subject only to be set aside by an administration for the payment of such preferred claims as might have existed under the law at the time and as such deed might have interfered with the orderly administration of said estate. Such deed made under the circumstances of this case was neither invalid nor in a state of suspense, except insofar as it might have interfered with the due execution of an administration of the estate of the deceased grantor in said deed of trust, but to the contrary said deed was valid and effective and upon its execution passed the title to the purchaser of said land at said sale against the heirs of the deceased and all other persons with the bare exception above stated.

We may add to what has been said that the record contains no fact showing that a necessity existed for an administration on the estate of Henry Wiener, or that there was existent any creditor who might have demanded such administration.

In support of the reasoning upon which ruling is based, we quote from the opinion of Judge Fly as follows: "The Supreme Court

in that case (Taylor v. Williams, *supra*) did not decide the precise question in this case, and in fact declined to decide it, but the logic of the opinion can lead to no other result than to the ruling that a sale made under a power before an administration is begun on an estate is not void, but merely voidable in case an administration should be begun within the four years prescribed by the statute. Such sale would not interfere with the due administration of the estate, for the moment that the Probate Court took control of the estate the sale would be superseded and the mortgagee relegated to the collection of his debt by the method required by law in cases of administration. No more would the sale before administration, under circumstances now being discussed, interfere with the law in regard to administering of estates than would the sale under a power when an independent executor is in charge of the estate, nor when a suit is instituted on a claim to enforce payment before administration. In either case an administration might be begun and the opening of administration within the legal time would have the same effect in either instance."

"In this case no administration was ever had on the estate of Henry Wiener, and, although the sale under the power may have been made before the expiration of four years from the time of his death, upon what reasonable ground can it be held that the sale was invalid? It did not tend in any way to interfere with an administration of the estate, because no such administration ever existed. It cannot with any reason or justice be held that the mortgagee should have enforced his claim through the District Court or that he should have gone to the extent of administering on the estate to enforce his lien and collect his debt. If in the case of the independent executor a power of sale could be executed, it would seem that the power could be executed when no administration was pending, and which in fact was never opened. It may be that there would be stronger probabilities of an administration in the one case than in the other, but those chances would be assumed by the party invoking the power of sale in either instance, and could not affect the right to make the sale."

While dealing with the question of the validity of sales under deeds of trust after the death of the grantor and pending administration, the terms "invalid" or "void" have been applied to such trustee deeds, but such language was evidently used in the sense that such sales were ineffectual to pass title under the existing circumstances. The terms "void" and "invalid," as there used, were intended to mean nothing more than ineffectual to pass title. As stated in the case of Brown v. Brown, 50 N. H., 538, "The term 'void' is perhaps seldom, unless in a very clear case, to be regarded as implying a complete nullity; but it is, in a legal sense, subject to large qualifications, in view of all the circumstances calling for its application and the rights and interests to be affected in a given case."

The fact that the power of sale under the circumstances named is only suspended or held in abeyance pending an administration, or until the time within which an administration may be had under the statute, and then only as it might affect such administration, is a reason why a sale made under a deed of trust after the death of the

grantor and before an administration has been sued out, or before the time in which an administration could be sued out had elapsed, is suspended and held in abeyance, until an administration is had when it becomes ineffectual to convey the title, or until the passing of the period when an administration could be had, at which time it becomes effectual to pass title, as well against such administration as it had been before against all others. For this reason and the reasons before assigned and given in the opinion of the Court of Civil Appeals, we hold with that court that the trustee deed made under the facts of this case as conceded was valid and passed the title of the grantor in the deed of trust to the property conveyed.

We are of opinion the plaintiffs below, as the heirs of the grantor, had no right to raise the question of the invalidity of the sale under the deed of trust on the ground that the sale was made after the death of the grantor and before the period had elapsed in which an administration could have been had on the estate of the grantor, for the reason that such issue could be raised only by the administrator in the interest of the creditors having claims against the estate of such decedent. The heirs of the decedent, as such, had no interest in the question of the validity of such sale of the decedent's property under the deed of trust executed by him, since the invalidity of such sales under such circumstances could be declared invalid only as they did or might interfere with the orderly procedure of pending administrations. If there was no administration pending there could be no interference with its orderly execution; and if an administration was pending the interference with its orderly enforcement could be suggested only by the administrator in the interest of the administration and creditors of the decedent.

The assignments of plaintiffs below present the question of the invalidity of the deed of trust executed by Henry Wiener without being joined by his wife. The contention is that because the wife refused to join in the deed of trust given by the husband on the homestead, that such instrument was void. It is also contended that at the time of the sale under the deed of trust the property so conveyed was the homestead of plaintiffs, they being, as contended, the remaining constituents of the family after the death of their father and mother.

The questions raised by these assignments must be determined in the light of the Constitution and laws existent prior to January 1, 1868, the date of the execution of the deed of trust by Henry Wiener. The Constitution of 1866, section 22, article VII, which was an exact reproduction of the Constitution of 1845, is as follows: "The Legislature shall have power to protect by law from forced sale, a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of land (not included in a town or city) or any town or city lot or lots, in value not to exceed $2,000.00, shall not be subject to forced sale for any debt hereafter contracted, nor shall the owner, if a married man, be at liberty to alienate the same, unless by consent of the wife, in such manner as the Legislature may point out."

Under the Constitutions of 1845 and 1866 the homestead was protected from forced sale, but it was permissible to mortgage the home-

stead, and when duly executed by the husband and wife, was enforcible when the power of sale was given. It was held that sales made of the homestead under deeds of trust or mortgages with power of sale were not forced sales as meant in the Constitution, and hence such sales passed title to the homestead when regularly made, when such instruments were executed by both husband and wife. Sampson & Keene v. Williamson and Wife, 6 Texas, 102, 55 Am. Dec., 762; Lee and Wife v. Kingsbury, 13 Texas, 68, 62 Am. Dec., 546; Jordon v. Peak, 38 Texas, 429; Chipman v. McKinney, 41 Texas, 76.

In the case at bar, however, the deed of trust was executed by the husband alone, the wife refusing to join him, and this furnishes the contention that the deed of trust was by reason of that fact void. We do not think the contention well grounded. The husband could not alienate the homestead without the consent of the wife in the execution of the conveyance, and it is clear he could not mortgage the homestead so as to cause its alienation without the joint execution of the instrument by his wife, but from this it does not follow, in the light of authority, that such mortgage or deed of trust is void. Such deed of trust was valid, but ineffectual to convey the homestead. The lien given by Wiener on the homestead without the consent of his wife was valid, but in the language of Judge Robertson, in Enge & Boring v. Cain, 61 Texas, 78, "its fruition was dependent upon the contingency of a cessation of the unassailable use." There was nothing in any of the Constitutions prior to 1876 making mortgages, deeds of trust, bonds for title or deeds alienating the homestead, void, as is the case in the later Constitution, except in specially enumerated cases. Formerly our courts were uniform in holding such instruments, when not executed by the wife with the husband, simply as ineffectual and not void, and their revival was recognized when, for instance, the homestead character of the property was abandoned or ceased to be used as such, or in cases of the death of the wife before the husband. In Enge & Boring v. Cain, supra, it was said: "Liens upon the homesteads, if given by the husband alone, were valid; and if given by the husband and wife, were valid; and if so given as to be effectual without a forced sale, were valid and effectual."

In the case of Stewart v. Mackey, 16 Texas, 67, 67 Am. Dec., 609, a mortgage was given on the homestead of the mortgagors, but no power of sale was given. It was held by the court in that case that the mortgage was ineffectual at the time of its execution, but that subsequently, when the homestead was abandoned, such mortgage became effectual and gave a prior lien on the property that was formerly exempt from forced sale, as against other creditors of the mortgagors. A like holding was made in the case of Lee v. Kingsbury, heretofore cited.

In the case of Duke v. Reed, 64 Texas, 705, a mortgage had been executed by one Dorn on his homestead without the signature and acknowledgment of the wife, and Chief Justice Willie held that, even if this were true, by the subsequent death of Dorn without leaving any member of his family surviving in whom the homestead right could vest, the land was deprived of its homestead character, and that immediately after this contingency the mortgage lien was

fastened on such property. The mortgage, ineffectual at the time of its execution, was revived when the homestead character of the property ceased to exist. This could not have been the case if the mortgage executed by the husband alone was, at the time of its execution, void. Under the present Constitution such an instrument is made void from the beginning, and can never be resuscitated.

Analogous to the case in hand and illustrative of the question under discussion is the case of Jordon v. Godman, 19 Texas, 273. In that case in 1850, Godman, without the consent of his wife, conveyed the homestead on which they were residing at the time of such sale. They left the State and Godman died. His widow and children returned to the State and attempted to recover the homestead on the ground that the deed made by the husband to the homestead without the wife's consent was void. The court held that, while the deed to the homestead by the husband without the wife's consent was ineffectual to alienate the homestead while the property was clothed with that character, yet after the homestead had been abandoned the conveyance, before ineffectual, became effectual to convey the property.

The cases of Brewer v. Wall, 23 Texas, 586, 76 Am. Dec., 76, and Allison and Wife v. Shilling, 27 Texas, 451, 86 Am. Dec., 622, illustrate the principle here contended for, that a mortgage given on a homestead under the Constitution prior to 1876, by the husband without the wife's consent, was not void, was not an unlawful act, but was simply a valid yet ineffectual conveyance. In the two cases last referred to the husbands had given bonds for title, agreeing to convey their homesteads. As to homesteads, specific performance could not be enforced, for such actions would have been construed as forced sales and their enforcement was inhibited by the Constitution. But in the one case the wife died and the court held the bond for title enforcible against the husband, and in the other the homestead being abandoned the bond for title theretofore non-enforcible became enforcible against the husband.

It seems to us that no more authority is required to establish the principle that the mortgage given by Henry Wiener on his homestead without the consent of his wife was not a void instrument, but was only inoperative during the lifetime of his wife and while the property retained its homestead character, and upon the death of his wife was a valid and effective deed of trust capable of being enforced.

This brings us to the other question so earnestly and with so great ability urged by counsel for plaintiffs below, namely, that at the time of the sale of the land in question under the deed of trust it was the homestead of plaintiffs as the surviving constituents of the family after the death of their father and mother. This contention of plaintiffs cannot, we think, be sustained either on principle or authority in this State. "Children have no interest in the homestead, as such, as the surviving parent, by virtue of the homestead rights of the deceased parent." If the homestead be community property, as in the case in hand, the surviving husband has and always has had the power to sell such homestead to pay the community debts. He has power to mortgage such homestead for a like purpose, and the

children, if there be any, whether minors or adults, have no power to interfere or obstruct the exercise of such dominion over such property by the surviving parent. The rights of children in the homestead are entirely dependent upon the will and action of the surviving parent. In case of the death of both parents, the right of minor children to occupy the homestead exists only through a guardian, and even then it is not an absolute right, as is that given by law to the survivor to occupy the homestead, but such right is made to depend upon the discretion and judgment of the proper court as to whether such necessity exists. Ashe v. Yungst, 65 Texas, 631; Johnson v. Taylor, 43 Texas, 122; Tadlock v. Eccles, 20 Texas, 782, 73 Am. Dec., 213; Brewer v. Wall, 23 Texas, 586, 76 Am. Dec., 76; Grothaus v. DeLopez, 57 Texas, 670; Shannon v. Grey, 59 Texas, 252.

It is doubtful whether a further discussion of this last question is demanded. If it should be thought otherwise, we will quote briefly from some of the authorities above cited. Judge Bell, in the case of Brewer v. Wall, above cited, on this question said: "This court has decided, and the Constitution clearly contemplates, that the homestead right of the wife does not survive after her death, so as to vest a homestead right in the children of the marriage."

Judge Gould, in the case of Johnson v. Taylor, above, which was a suit by a minor child to recover the homestead that had been sold by the mother as community survivor, said: "It is claimed by appellant that, inasmuch as the father's estate was insolvent, the 45th section of the probate law of 1848 (Paschal's Dig., Art. 1154) had the effect of vesting in his child, the plaintiff, an absolute estate of one-half of the homestead not subject to sale by the survivor of the community. The case of Green v. Crow, cited by appellant, 17 Texas, 188, is to the effect that, under the section referred to, the right of the widow and children to such exempt property is absolute as against creditors. But there is believed to be nothing in that law or that decision justifying the conclusion that the child in such a case, as against the surviving widow, takes any other estate than that given him by the general laws of descent and distribution. Where the homestead was the separate property of the survivor, the right of the survivor to sell and convey it is well settled. (Brewer v. Wall, 23 Texas, 589, 76 Am. Dec., 76; Tadlock v. Eccles, 20 Texas, 782, 73 Am. Dec., 213.) The children have no interest in the homestead as such, as against the surviving parent, by virtue of the homestead rights of the deceased parent. If it was the community property of their parents they inherit the share of the deceased parent just as they inherit other community property."

Judge Wheeler, in Tadlock v. Eccles, above, expressed the following view, speaking for the court: "But it is insisted that there are other parties, the children of the defendant, who have intervened in this suit, and who are not concluded by the former judgment, because not parties to it. If the wife were here to assert her rights, she would not be concluded, because not a party to the proceeding, and because she cannot be divested of her right, except by her own voluntary act. But the children cannot control the parent in the disposition of the homestead, or assert a right therein adversely to the act of their par-

ents. The parent has the right to dispose of the homestead without consulting them; and whatever will bind the head of a family will be binding upon them.''

''It is well settled that, after the death of the wife, the husband could have sold the property for the purpose of paying this community debt, without first qualifying as survivor in community. It is equally well settled that his administrator, if he had died, would have had the right to control and administer the property for the purpose of paying community's debts.'' (Shannon v. Gray et al., 59 Texas, 251.)

It is evident that the plaintiffs, as the heirs of Henry and Hannah Wiener, had no right in the property in controversy after it was sold under the deed of trust. The debt was shown to have been a community debt and the property was also of the community.

There are other questions raised by the assignments of plaintiffs, but in view of the fact they have all been ably discussed and correctly disposed of by the Court of Civil Appeals in the opinion of that court, which is approved by this court, it will serve no good purpose here to discuss such other questions.

The judgment of the Court of Civil Appeals will be affirmed, and it is so ordered.

Opinion filed December 20, 1911.


MR. JUSTICE RAMSEY delivered the following dissenting opinion:

The principal question in this case, and the only one which it is my purpose to consider, is thus well stated by Mr. Justice Dibrell in his opinion: ''Whether a sale made by a trustee, under a power of sale contained in a deed in trust after the death of the grantor, and less than four years after such death, is void, and passes no title.'' If this question should be answered in the affirmative, it is agreed that the judgment, in the instant case, should be reversed; if, however, a sale so made is valid and passes title to the land sold, then it is clear to my mind that there was no error in the record for which the judgment of the Court of Civil Appeals should be reversed, and defendant in error is entitled to an affirmance.

This particular question has never been ruled on in this State. It is incidentally referred to by Mr. Justice Williams in the case of Taylor v. Williams, 101 Texas, 388, where, in discussing that case, he said: ''In referring to the effect of regular administrations upon powers of sale, such as this, we are not, of course, intimating the opinion that the actual opening of an administration is necessary. That question is not before us. If it be conceded that a power of sale cannot be exercised where the estate of the deceased mortgagor is unadministered and where the time in which administration is permitted has not elapsed, the concession does not reach cases like this, where the estate is represented by an independent executor, against whom the creditor is left by the probate law to pursue the remedies applied to his case by general principles and is not confined to any prescribed course, as in the case of regular administrations.'' However, a critical examination of the facts of that case will show that more than four years had elapsed from the date of the death of W. J.

Williams, whose interests were involved in litigation. The record shows that one Smith executed a trust deed in May, 1887, and, on February 1, 1889, conveyed the land to one W. J. Williams. The note secured by the trust deed was due November 1, 1887. On April 2, 1889, the land was sold by the substitute trustee and bought in by one Connery, who held same in trust for Taylor, the beneficiary in the original trust deed. It seems that by an understanding between Taylor and Smith the latter had arranged the sale of the land to one J. H. Bemis, and Connery executed the conveyance to him. In July, 1891, J. H. Bemis conveyed the land to J. M. Bemis. The record further shows that W. J. Williams, the vendee of Smith, died in March, 1894, and that soon thereafter and during the same year W. T. Williams qualified and has since been acting as executor of his will, free from the control of the Probate Court. Smith, as the record shows, died in 1897. Suit was brought (in another proceeding) by Williams' executor against Bemis and Connery and Helen Smith, executrix of J. T. Smith, for the land conveyed by the trust deed on the ground that one Armstead, the original trustee, had not refused to act as such and that the sale by the substitute trustee was void. On that ground Williams recovered the land. See Bemis v. Williams, 7 Texas Crt. Rep., 651. It will be noted that this opinion was delivered on May 6, 1903. So that it is evident that the sale discussed in Taylor v. Williams, supra, was made long after the expiration of four years from the date of the death of J. T. Smith, and very much longer from the date of the death of W. J. Williams. Therefore the only question relating to the matter here involved and decided in the case of Taylor v. Williams was that the suspension of power of sale is not affected by an administration under a will by the independent executor acting without the control of the Probate Court where more than four years had elapsed after the date of the death of the grantor in the trust deed.

In all the other cases cited and discussed by Justice Dibrell it is directly stated that more than four years had elapsed after the death of the grantor in the trust deed and before the sales relied on, except in the case of the National Exchange Bank v. Jackson, 33 S. W., 277. The opinion in that case does not state the facts in any detail, but it is apparent that John J. Aikens, who executed the trust deed under which the sale was made, had been dead considerably more than four years before the sale under power. We gather that he was dead before June 28, 1888, when the land was sold to Jackson, because the record speaks of certain representations made in respect to a mortgage then recorded which was known to exist by Mrs. Aikens and the officers of the association, but not to Jackson. So that we come back to the question which as yet is one *res integra* in this State— that is, whether a sale made by a trustee under a power of sale contained in a deed in trust after the death of the grantor and less than four years after such death is void, or whether the sale passes title.

In discussing and passing on questions closely akin to this it seems to me that this court has not always clearly distinguished between what is void and what is voidable, and there are expressions in the books, as suggested by Mr. Justice Williams in the case of Taylor v.

Williams, supra, and by Mr. Justice Dibrell in this case, which indicate that a sale made under the circumstances existing in this case ought not to be and would not be sustained, but I believe that Mr. Justice Dibrell is quite correct in saying that there is no decision in this State, where the point was distinctly ruled, that holds such a sale was made invalid, and that the point is now before this court for the first time under circumstances demanding a clear and square answer to it.

Now, there are some questions well ruled in this State and about which neither the lawyer nor judge should disagree. It is abundantly established, I think, that a power of sale contained in a trust deed authorizing a conveyance of property on default is a power coupled with an interest and is not revoked by the death of the grantor. It is also well settled in this State that in cases where an administration had been opened in the Probate Court that the power of sale contained in such trust deed is suspended, and this on the ground that its exercise is inconsistent with the orderly proceedings of such courts in the administration of such estate. It is also well settled, I think, that in a case where more than four years have elapsed from the date of the death of the grantor in a trust deed and no administration had been opened on such estate, that, since no administration can thereafter be opened, the power of sale which had theretofore been held in suspense is revived when a sale made thereunder and in conformity with the requirements thereof will and should be sustained. None of these principles, however, as it seems to me, support the sale in this case. Here, confessedly, under the testimony of some of the witnesses, the grantor in the trust deed had been dead but a few months when the sale was made, and more than three years yet remained to run within which an administration could be opened. Undoubtedly the power of sale contained in the trust deed was in a state of suspense. The sale was made under it while in such state of suspense; the purchase made while in a state of suspense; the deed executed while in such state of suspense, and the rights of the parties fixed while in such state of suspense. It must be remembered, too, that it was, in a sense, an involuntary sale, a forced sale, or, as is sometimes said, a sale in *invitum*. I am inclined to believe, with great deference to the conclusion of my brethren, that the rights of the parties in such case must be judged and determined with reference to the facts existing and the power obtaining and in force when the sale was made. If the rule of my brethren is to obtain we would have the singular anomaly of a grant under a trust deed invalid when made and which no one could assert and maintain in any court for more than three years, yet at the expiration of the full period of four years from the date of the death of the grantor, a sale valid and rights enforceable. This view is further aided, it seems to me, by the fact that many persons besides the grantor in the trust deed and the creditors to be secured by it are interested in the sale of the property and the sums realized therefrom. Any creditor having no lien would undoubtedly be entitled to any surplus remaining after the satisfaction of the mortgage, and the heirs at-law would be entitled to recover and receive any surplus after the payment of all debts.

Who would bid at a sale made under circumstances under which this one was made, when it might be annulled by the opening of an administration? Such a sale would result in a needless and useless sacrifice of debtor's property. Again, in this case, who would be entitled to possession of the property pending the running of the three years yet to elapse before the right to an administration? · Who would be entitled to the rents and profits of such property? To sustain such a rule, it seems to me, ought not to be the rule in this State. Its endorsement is not necessary to the security of the creditor who can, through the orderly processes of the Probate Court, obtain an allowance of his debt and by a sale of the pledged property obtain title thereto or satisfaction thereon. To sustain the sale holds the title to the property in suspense and makes its validity depend, not on the facts as they existed when it was made, but as they may exist by action or inaction of other persons three years after the time the sale had been made. It results that the sale is held in a state of suspended animation and the property in a qualified legal cold storage, until the four years shall elapse, and then it blossoms forth into full blown strength, beauty and effectiveness. Clearly if the power of sale was suspended, the sale had thereunder was likewise suspended.

For these reasons, thus briefly stated, I am unable to agree with my brethren and am therefore very reluctantly compelled to enter my dissent.

Opinion filed December 20, 1911.

ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

We are not convinced that we erred in holding in the former opinion that a sale made of real estate under a deed of trust within four years after the death of the mortgagor and before administration would be voidable but not void. Upon further consideration of this case we have concluded that the facts do not demand a decision of that issue and we will limit this opinion to the present case. Without repeating the statement of the former opinion, we will proceed upon its conclusions thus condensed.

When the deed of trust was executed the land was the homestead of Weiner and his wife, who did not sign it and who died before the sale was made.

On the 15th day of August, 1870, the Legislature enacted a law, which took effect from its passage, entitled "An Act prescribing the mode of procedure in district courts in matters of probate." Section 26 of the said Act reads: · "The property reserved from forced sale by the Constitution and laws of this State, or its value, if there be no such property, does not form any part of the estate of a deceased person, where a constituent of the family survives." (See Paschall's Dig. Laws, vol. 4, art. 5487.) The homestead was reserved from forced sale by the Constitution; therefore, it was no part of his estate and the courts had no jurisdiction of it. No court could have applied it to the payment of costs of administration nor to the payment of

the funeral expenses; indeed it was not subject to the orders of the District Court in the course of administration.

It has been conclusively shown by the able and exhaustive opinion of Judge Dibrell that the power of sale in the deed of trust was not revoked by the death of Weiner, and the question arises, was that power of sale suspended to await administration under the section of the law of 1870 before copied?

The only reason that has been assigned in any of the cases for holding that the death of the mortgagor suspends the power of sale is that the foreclosure of the mortgage might embarrass the court in the regular administration of the estate. Now if the foundation upon which alone the rule rests does not exist, then the rule cannot apply to this case.

It being the law that at the death of Weiner no court had jurisdiction of the land and that an administrator could not have placed it upon his inventory, it follows conclusively that if there had been an administration on Weiner's estate the sale of this homestead under the mortgage could not have interfered with the administration of the estate. Having no jurisdiction of the property the court could not have made any order concerning it. The logical conclusion must follow that the sale of the land under the deed of trust was not suspended to await the granting of administration by a court which has no jurisdiction and whose order could not affect the property in any way.

If there had been administration the court controlling the estate could not have ordered the sale of the homestead to discharge the deed of trust and the contention to that effect presents the absurd condition that, while the administrator was administering the estate, if there had been administration, the owner of the mortgage must await the closing of that administration to secure payment of a debt which could not be before that court and out of property not subject to its jurisdiction. Or, no administration being had, as in this case, the owner of the mortgage must wait four years for the appointment of an administrator, who could not take possession of the property, by a court that could not order a sale of the property; in fact, could exercise no jurisdiction over it.

The reason for the rule by which death suspends the sale of property under a mortgage with power to sell did not and could not exist under the law of 1870, cited herein; therefore, the power was not suspended by Weiner's death and the sale of the land vested title in the purchaser.

The motion for Rehearing is Overruled.

Opinion filed June 5, 1912.